Mary Ann THOMSON, Plaintiff,

v.

The OHIO STATE UNIVERSITY HOSPITAL, et al., Defendants.

No. C2–97–189.

United States District Court, S.D. Ohio, Eastern Division.

May 8, 1998.

Kevin J. O'Brien, O'Brien & Lease, Columbus, OH, for Plaintiff.

Keith W. Schneider, Maguire & Schneider, Columbus, OH, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

GRAHAM, District Judge.

Plaintiff Mary Ann Thomson brings this action against defendants The Ohio State University Hospital and The Ohio State University under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* The matter is before the Court on the motion of the defendants to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

### *I.*

There are generally two varieties of motions challenging subject matter jurisdiction under Rule 12(b)(1). The first possibility, that defendants interpose a facial attack on the subject matter jurisdiction alleged in the complaint, merely questions the sufficiency of the pleading. When reviewing a facial attack, the district court liberally takes the allegations in the complaint as true. *Murphy v. United States*, 45 F.3d 520 (1st Cir. 1995); *Sanner v. Board of Trade of City of Chicago*, 62 F.3d 918 (7th Cir.1995); *see generally* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 218–220 (West 1990). The second possibility is that defendants are arguing the existence

or non-existence of certain facts which deprive the court of subject matter jurisdiction. When a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). A factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." *See generally* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1364, at 468–69 (West 1990). Where a factual controversy exists, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. The trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. *See also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir.1977).

The present motion is clearly of the former variety. Therein, defendants do not take issue with the facts of the case as alleged by plaintiff. Rather, defendants argue that plaintiff's complaint fails, on its face, to vest subject matter jurisdiction in this Court. Plaintiff's sole claim is brought under the FMLA, to which defendants argue they are immune from suit in this Court under the Eleventh Amendment to the United States Constitution. Accordingly, the allegations in plaintiff's complaint as taken as true.

### II.

Plaintiff alleges in her complaint that she was an Administrative Assistant in the Psychiatric Services Department of The Ohio State University Hospital from April, 1994 to February 29, 1996. Plaintiff alleges that in November, 1995 her father was diagnosed with Alzheimer's disease and that she at that time undertook an effort to find long-term care for him. Plaintiff met with her supervisors, explained the situation, and requested unpaid leave for some unspecified period for the purpose of finding a health care provider for her father. Plaintiff's request was denied. Plaintiff tendered a resignation to defendants on or about February 1, 1996 which was effective February 29, 1996. Plaintiff alleges that on February 2, 1996, she was informed by a Robbin Kirkland in defendants' Human Resources Department of the provisions of the FMLA. On February 5, 1996, plaintiff tendered a document to defendants in which she purported to withdraw her resignation and she simultaneously she made another request for leave which was supported by documents detailing her father's condition. According to plaintiff, on or about February 27, 1996, she was called to a meeting in the office of the Director of Psychiatric Services at which her supervisors took the position that the FMLA did not require the provision of leave under these circumstances. Plaintiff alleges that, notwithstanding the provisions of the FMLA, her second request for leave was denied. Thereafter plaintiff resigned from her position.

On February 14, 1997, plaintiff filed this suit alleging a violation of the FMLA. On October 31, 1997, defendants filed the present motion seeking dismissal on the grounds that the Eleventh Amendment bars an action under the FMLA against the state and its instrumentalities.

### III.

It is well established that the Eleventh Amendment to the United States Constitution prevents a federal court from entertaining a suit brought by a citizen against his own state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment also protects instrumentalities of the state where they are "arm[s] or alter ego[s] of the state." *Regents of University of California v. Doe*, 519 U.S. 425, ——, 117 S.Ct. 900, 903, 137 L.Ed.2d 55 (1997); *Hall v. Medical College of Ohio*, 742 F.2d 299, 301 (6th Cir.1984).

The Eleventh Amendment bars suits against a state and its agencies unless the state has waived its sovereign immunity or Congress has overridden it by abrogation. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Whittington v. Milby*, 928 F.2d 188 (6th Cir.1991).

■ The state of Ohio has not clearly waived its sovereign immunity from suit in the case of claims brought under the FMLA. As a general matter, the state of Ohio has only consented to being sued in the Ohio Court of Claims pursuant to Ohio Rev.Code § 2743.02. Under Article I, § 16 of the Ohio Constitution, only the Ohio General Assembly may waive Ohio's sovereign immunity through legislative action. *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449, 460 (6th Cir.1982). Plaintiff points to no statutory enactment whereby the General Assembly has done so in FMLA cases. Instead, plaintiff argues that Congress has abrogated the sovereign immunity of the state of Ohio to FMLA suits pursuant to its power under § 5 of the Fourteenth Amendment.

■ In determining whether Congress has effectively abrogated a state's sovereign immunity, the Court must determine: (1) whether Congress has unequivocally expressed its intent to abrogate immunity; and (2) whether Congress has acted pursuant to a valid exercise of power, that is, whether the law was passed pursuant to a constitutional provision which grants Congress the power to abrogate. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54–58, 116 S.Ct. 1114, 1123–1125, 134 L.Ed.2d 252 (1996).

The first prong of the *Seminole* test is not a novel concept in Supreme Court jurisprudence. It has been plainly established that for Congress to abrogate a state's Eleventh Amendment immunity it must express its intention to do so in unmistakable language within a statute. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 243, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Congress clearly expressed an intention to abrogate the immunity of state governments to the FMLA when it included state and local governments as proper employer-defendants under the act. Under the FMLA, the term "employer" includes any "public agency" "as defined in section 203(x) of this title." 29 U.S.C. § 2611(4)(A)(iii). Title 29 U.S.C. § 203(x), which is the definitions section of the Fair Labor Standards Act, defines "public agency," in pertinent part, as "the Government ... of a State or political subdivision thereof; any agency of ... a State, or a political

subdivision of a State[.]" In addition, the FMLA provides that an action to recover damages or equitable relief may be maintained against an employer in federal or state court. 29 U.S.C. § 2617(a)(2). Congress has clearly expressed its intent to abrogate the states' Eleventh Amendment immunity to actions under the FMLA.

In regard to the second prong of the *Seminole* test, the only currently recognized authority for Congress to abrogate the states' sovereign immunity, as indicated in *Seminole,* 116 S.Ct. at 1125, consists of Congress' enactment of legislation pursuant to its enforcement powers under § 5 of the Fourteenth Amendment of the United States Constitution. Section 5 of the Fourteenth Amendment provides that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

The Supreme Court has developed a test for determining whether legislation was properly enacted pursuant to Congress' power under § 5 of the Fourteenth Amendment: (1) whether the statute may be regarded as an enactment to enforce the Equal Protection Clause; (2) whether it is plainly adapted to that end; and (3) whether it is not prohibited by, but is consistent with, the letter and the spirit of the constitution. *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); *Wilson–Jones v. Caviness,* 99 F.3d 203, 209 (6th Cir.1996). The Sixth Circuit Court of Appeals went on to point out in *Wilson–Jones* that:

> It is clear to us that these three *Katzenbach* factors cannot be kept so permissive as to make them collapse into the "rationally related" test generally used for the enforcement clauses of other constitutional amendments. The Fourteenth Amendment contains rather specific constitutional goals, such as the elimination of race discrimination by state actors, and also more general goals, such as the guarantee to every citizen of equal protection of the laws. The general goal of equal protection of law encompasses every facet of a citizen's interaction with government. If we were to say that an act is valid if it is rationally related to achieving equal protection of the laws, then § 5 becomes a

license to Congress to pass any sort of legislation whatsoever. In reviewing such legislation, we could only ask whether the statute was a rational means to make the system of laws more rational, and the answer would always be "yes."

On the other hand, it is equally clear that Congress has broad discretion to legislate the core promises of the Fourteenth Amendment. Specifically, the Supreme Court has been extremely deferential when reviewing under Section 5 legislation passed to enforce the ban on race discrimination by a state, to prohibit ethnic and linguistic restrictions on voting, to remedy discriminatory practices in the hiring of public contractors, or to remedy gender discrimination by state employers.

*Wilson–Jones,* 99 F.3d at 209 (footnote and citations omitted).

With respect to the first prong of the *Katzenbach* test, the Sixth Circuit has held that "[t]he simplest way to meet this requirement is for Congress to declare explicitly that the legislation is passed to enforce Fourteenth Amendment rights." *Wilson–Jones,* 99 F.3d at 210. Plaintiff argues that the FMLA was passed to address equal protection concerns. (*See* Plaintiff's Memorandum Contra Defendants' Motion to Dismiss at 13). Section 2601(b) of Title 29 outlines the purposes of Congress in enacting the FMLA. Of particular relevance are 29 U.S.C. § 2601(b)(4) and (5) which state that the entitlement to leave under the FMLA is to be provided

(4) ... in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) and for compelling family reasons, on a gender-neutral basis; and

(5) to promote the goal of equal employment opportunity for women and men, pursuant to such clause.

This is the only reference to the Fourteenth Amendment in the FMLA. Defendants concede that the above language satisfies the first prong of the *Katzenbach* test. (*See*

Defendants' Memorandum in Support of their Motion to Dismiss at 2–3). The Court concludes that the FMLA may be regarded, on its face, as an attempt to enforce the Equal Protection Clause. Of course, this is only the beginning of the inquiry under *Katzenbach,* as an examination of the substance of the statute is necessary to determine whether Congress acted within its constitutional authority. *See Woods v. Cloyd W. Miller Co.,* 333 U.S. 138, 144, 68 S.Ct. 421, 92 L.Ed. 596 (1948) ("the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise.") *cited in Wilson–Jones* 99 F.3d at 208; *see also Garrett v. Bd. of Trustees of University of Alabama,* 989 F.Supp. 1409, 1412 (N.D.Ala.1998) (calling the language quoted above from the FMLA "no more than self-serving declarations" included by Congress in order to implicate a purported Fourteenth Amendment purpose).

■ The second prong of the *Katzenbach* test is whether the legislation is "plainly adapted" to Congress' "identified or hypothetical Fourteenth Amendment purpose." *Wilson–Jones,* 99 F.3d at 210. The United States Supreme Court recently explained, in *City of Boerne v. Flores,* —— U.S. ——, ——, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997), that:

Congress' power under § 5 ... extends only to "enforc[ing]" the provisions of the Fourteenth Amendment. The Court has described this power as "remedial," *South Carolina v. Katzenbach, supra,* [383 U.S. 301] at 326 [86 S.Ct. 803, 15 L.Ed.2d 769 (1966)]. The design of the Amendment and the text of § 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States. ... Congress does not enforce a constitutional right by changing what the right is. It has been given the power "to enforce," not the power to determine what constitutes a constitutional violation. Were it not so, what Congress would be enforcing would no longer be, in any meaningful sense, the "provisions of [the Fourteenth Amendment]."

The Supreme Court went on to point out that, while the line between remedial and substantive legislation may not always be clear, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. Lacking such a connection, legislation may become substantive in operation and effect." *Id.* Legislation creating a new substantive right cannot be passed pursuant to the Fourteenth Amendment because Congress' enforcement authority under § 5 is limited only to action which is "remedial and preventive" in nature. *City of Boerne,* —— U.S. at ——, 117 S.Ct. at 2170. Section 5 grants Congress "the power to make the substantive constitutional provisions against the States effective" but does not grant Congress the authority to substantively change the nature of constitutional rights. *Id.* 117 S.Ct. at 2163–66.

In enacting the FMLA, Congress, in addition to pursuing the general goal of promoting family cohesion, was attempting to prevent discrimination on the basis of gender. Congress noted that our society traditionally places the responsibility for familial caregiving on women and that this responsibility affects the working lives of women more than men. 29 U.S.C. § 2601(a)(5). Further, "employment standards that apply to one gender only have serious potential for encouraging employers to discriminate against employees and applicants for employment who are of that gender." 29 U.S.C. § 2601(a)(6). Congress, by enacting the FMLA, sought to prevent employers from discriminating against women because of the responsibility for familial care imposed on them by society. Indeed, the stated effort to "promote the goal of equal employment opportunity for women and men," 29 U.S.C. § 2601(b)(5), evinces an intent to prevent retaliation or discrimination against an employee, who Congress has found to be female more often than not, who requests time off work to perform care-giving functions. The question before the Court is whether the means adopted by Congress in the FMLA are congruent and proportional to the goal of preventing gender discrimination in this context.

The FMLA was enacted on February 5, 1993 to apply to employers who simulta-neously employ at least fifty workers for at least twenty weeks during a calendar year. 29 U.S.C. § 2611(4)(A)(i). By virtue of its provisions, eligible employees are entitled to take leave for a total of twelve weeks per calender year:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1). An employee eligible for these benefits under the FMLA is any person who has been employed for a minimum of twelve months by the employer from whom leave is requested and who has performed a threshold 1250 hours of service. 29 U.S.C. § 2611(2)(A)(i) and (ii). Employees who return from FMLA leave are entitled to be restored by the employer to the same position they held before taking leave with equivalent benefits, pay and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1). The employer may not otherwise retaliate against the employee for taking leave under the FMLA. 29 U.S.C. § 2615.

The creation by statute of an affirmative entitlement to leave distinguishes the FMLA from other statutory provisions designed to combat discrimination. In effect, Congress, inasfar as it purports to rely on the Fourteenth Amendment as the basis of the FMLA, is attempting to dictate that the Equal Protection Clause of the Fourteenth Amendment requires that employees be furnished twelve weeks of leave per year for the reasons set forth in the act. This is patently the sort of substantive legislation that exceeds the proper scope of Congress' authority under § 5. As earlier noted, there must be a "congruence and proportionality" between the injury to be prevented and the means

adopted to that end. *City of Boerne,* —— U.S. at ——, 117 S.Ct. at 2164. The means employed in the FMLA are not congruous or proportional to the goal of achieving equal treatment, regardless of gender, in the workplace. Of course, the Equal Protection Clause demands this of state employers. However, the FMLA does not merely make it illegal for employers to treat requests for leave differently on the basis of gender, but instead mandates that employers provide employees with a new and valuable benefit.

■ The congruity and proportionality of the FMLA to the purposes stated by Congress related to the Fourteenth Amendment must be considered in light of the substantial steps already taken by Congress to achieve these goals. An employee who is treated inequitably in the granting or availability of leave time on the basis of his or her gender suffers discrimination which is actionable under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.* Moreover, if the employer is a state or an instrumentality thereof, then the employee could opt to proceed against the employer-state officials in their official capacities under 42 U.S.C. § 1983 to vindicate, with appropriate equitable relief, his or her rights under the Equal Protection Clause directly. "The Equal Protection Clause of the Fourteenth Amendment confers a right to be free from gender discrimination that is not substantially related to important governmental objectives." *Jones v. Clinton,* 990 F.Supp. 657, 668 (E.D.Ark.1998). In other words, not only is the affirmative entitlement created by the FMLA disproportionate in that it creates rights instead of just protecting the right of equal treatment under the Equal Protection Clause, but it is also unnecessary because employees of the state already have available a direct avenue of legal recourse for deprivations of equal protection. Congress has already met the legitimate goals of remedying and preventing constitutional violations of this type by its passage of prior legislation.

■ As earlier mentioned, "Congress does not enforce a constitutional right by changing what the right is. It has been given the power 'to enforce,' not the power to determine what constitutes a constitutional

violation." *City of Boerne,* —— U.S. at ——, 117 S.Ct. at 2164. This is what Congress has done in enacting the FMLA and therefore the Court concludes that the second factor of the *Katzenbach* test, that is, the requirement that there is a "congruence and proportionality between the injury to be prevented and the means adopted to that end" *City of Boerne,* —— U.S. at ——, 117 S.Ct. at 2176, has not been met.

This is not to say that Congress is powerless to legislate on matters of social policy as it has in passing the FMLA. This holding merely addresses the issue of whether legislation endowing employees across the country with a general entitlement to leave can be properly considered the enforcement of the provisions of the Fourteenth Amendment within the meaning of § 5. Since this Court holds that it cannot, Congress was without the power to abrogate the immunity of the states to suits under the FMLA. Congress' attempt to do so is therefore ineffective.

With respect to the third *Katzenbach* factor referred to in *Wilson–Jones,* whether the legislation is consistent with the spirit of the Constitution and the negative constraints therein, this Court has additional concerns.

In *Nihiser v. Ohio Environmental Protection Agency,* 979 F.Supp. 1168, 1175 (S.D.Ohio 1997), this Court stated the following when considering the third *Katzenbach* factor as applied to the accommodation provisions of the Americans with Disabilities Act:

> The accommodation provisions of the ADA and the Rehabilitation Act will impose a financial burden on state employers. ... Congress has not only created substantive rights on the part of the disabled, but has charged the states as employers with the responsibility of bearing the costs of these newly-created entitlements. These provisions constitute a substantial infringement on a traditional area of state sovereignty which is not counterbalanced by the goal of preventing or remedying constitutional violations.

Similarly, the FMLA creates an entitlement to leave, the cost of which is to be borne by employers. If applicable to the states, the FMLA would impose a significant financial

burden. It would be the state employer which would either have to absorb the cost of decreased productivity or expend its resources in an attempt to replace absent employees while they enjoy their leave benefits under the FMLA. Moreover, the FMLA would mandate that state employers provide a valuable benefit to their employees that is entirely foreign to the employment agreement reached between the individual and the state. This would be an inappropriate interference into a traditional area of state sovereignty which runs afoul of the spirit of the Constitution and the concepts of federalism which it contains.

Accordingly, after reviewing the *Katzenbach* factors, the court concludes that the FMLA is not a valid exercise of Congress' enforcement power under § 5 of the Fourteenth Amendment. Congress has not effectively abrogated the Eleventh Amendment immunity of states from suit under the FMLA and defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is granted.

This Court is aware of several FMLA cases in which district courts have addressed Eleventh Amendment issues. All of these cases were decided outside the Sixth Circuit.

In *Knussman v. State of Maryland*, 935 F.Supp. 659, 662 (D.Md.1996), the district court held that Congress had unequivocally expressed its desire to abrogate the immunity of the states by the language used in the FMLA. This Court is in agreement with that holding. However, the court in *Knussman* did not proceed to address whether the FMLA was enacted pursuant to a valid exercise of constitutional power that provides Congress the power to abrogate the immunity of the states. This issue was not raised by the parties.

In *Biddlecome v. University of Texas*, 1997 WL 124220 (S.D.Tex.1997) the district court held that not only had Congress unequivocally expressed its intent to abrogate the immunity of the states under the Eleventh Amendment but that it had enacted the FMLA pursuant to a valid exercise of constitutional power under the Fourteenth Amend-

ment. *Id.* at \*2–\*3. However, the *Biddlecome* court did not apply the *Katzenbach* test, as this Court must, in its analysis of the FMLA. Instead, it looked only to the language used by Congress in the act.[1]

In *Jolliffe v. Mitchell*, 986 F.Supp. 339 (W.D.Va.1997), the district court found that the FMLA was passed pursuant to the Fourteenth Amendment and that Congress had unequivocally made its intention to abrogate state immunity clear. However, the *Jolliffe* court did nothing more than take a cursory look at the language in the FMLA. Although decided after *City of Boerne*, the *Jolliffe* opinion inexplicably makes no reference thereto and also makes no reference to the *Katzenbach* test.

These cases are rejected to the extent their holdings are inconsistent with this Court's present holding. None of these cases apply the analysis required by the United States Supreme Court and the Sixth Circuit Court of Appeals to the issue before this Court today.

## IV.

Plaintiff has argued that holding in favor of the state on the Eleventh Amendment issue is unfair because she has no other avenues of relief. In addition, plaintiff has argued that a finding in favor of the state is unfair to state employees, as state employees are then not entitled to the benefits created by the FMLA. However, the sole issue before this Court is whether it has subject matter jurisdiction over this action. Neither of plaintiff's arguments have any relevance to this issue. The Court, having concluded that it does not have subject matter jurisdiction to hear plaintiff's case, has reached the end of its inquiry.

## V.

Based on the foregoing, defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is GRANTED.

---

**1.** This takes us no further than the first factor of the *Katzenbach* test.

The clerk shall enter final judgment in the favor of the defendants, dismissing plaintiff's complaint with prejudice at plaintiff's cost.

It is so ORDERED.