**David McGREGOR, Plaintiff,**

v.

**Glenn S. GOORD, Individually and in his official capacity as Commissioner of the Department of Correctional Services, Thomas E. Testo, Alfred F. Accornero and Captain Rock, Individually and in their official capacities, Defendants.**

No. 97–CV–0816.

United States District Court, N.D. New York.

Aug. 17, 1998.

Rowley, Forrest Law Firm, Albany, NY (Brian J. O'Donnell, of counsel), for Plaintiff.

Office of Attorney General, Department of Law, Albany, NY (Eric D. Handelman, Asst. Attorney General, of counsel), for Defendants.

**MEMORANDUM, DECISION & ORDER**

MCAVOY, Chief Judge.

Plaintiff David McGregor brings this action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, alleging defendants violated his rights to leave thereunder. Defendants now move to dismiss the Complaint, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. Defendants argue they are immune from suit under the Eleventh Amendment to the United States Constitution.

## I. BACKGROUND

### A. Facts

Defendants do not dispute plaintiff's allegations for the purposes of the motion. Plaintiff was employed by the New York State Department of Correctional Services ("DOCS") as a corrections officer until his termination on November 19, 1996. (Pl. Compl.¶4). Defendants are DOCS employees. During the relevant period of his employment, plaintiff and his wife were expecting a child. (*Id.* ¶11). Plaintiff notified DOCS that he would need to take leave on a number of days to accompany his wife to prenatal medical appointments and Lamaze classes beginning in mid-October, 1996. (*Id.* ¶12). After taking such leave on November 12, 1996, plaintiff was notified that he was being charged "absent without leave" for missing work that day. (*Id.* ¶16). On November 15, 1996, defendant Alfred Accornero suspended plaintiff from his position, and plaintiff shortly thereafter was discharged. (*Id.* ¶¶21–23).

### B. Procedural History

On June 9, 1997, plaintiff filed the present Complaint alleging that defendants "interfered with, restrained and denied the plaintiff's use or attempt to use rights provided under" the FMLA. (Pl.Compl.¶24). Plaintiff further alleges that he was wrongfully discharged as a result of his use, or attempted use, of those rights. (*Id.* ¶25). Defendants appeared by way of Answer filed August 8, 1997.

On May 28, 1998, defendants filed the present motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).

## II. DISCUSSION

### A. Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction

 Under Federal Rule of Civil Procedure 12(h)(3), the Court must grant defendants' Rule 12(b)(1) motion to dismiss if plaintiff fails to carry his burden to show that the Court may properly exercise subject matter jurisdiction. *In Re Joint E. & So. Dist. Asbestos Litigation*, 14 F.3d 726, 730 (2d Cir.1993). " 'Without jurisdiction the court cannot proceed at all in any case. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.' " *Steel Co. v. Citizens for a Better Environment*, ⸺ U.S. ⸺, ⸺, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)).

### B. Defendants' Motion

#### 1. The Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides as follows:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. This language not only prohibits suits against states brought by citizens of other states in federal court, but, implicitly, suits against a state in federal court brought by its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The first question accordingly is whether the present suit is brought against the state.

 Plaintiff names as defendants neither the State of New York nor DOCS. He does, however, bring official capacity claims against the individual defendants, all of whom are DOCS employees. In the case of such "official capacity" claims, the state is the real party in interest. *See Farid v. Smith*, 850 F.2d 917, 921 (2d Cir.1988); *see also Kentucky v. Graham*, 473 U.S. 159, 166,

105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."). Moreover, DOCS, as a state agency, is entitled to assert Eleventh Amendment immunity. *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n. 1 (2d Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). Accordingly, to the extent plaintiff brings suit against defendants in their official capacities, this is a suit against the State within the meaning of the Eleventh Amendment.

 Eleventh Amendment immunity, however, is not absolute. As the Second Circuit recently discussed in *Close v. State of New York*, 125 F.3d 31 (2d Cir.1997), there are two ways in which a state may be divested of its immunity under the Eleventh Amendment. First, "Congress may abrogate a state's sovereign immunity through a statutory enactment." *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–56, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). Second, "a state may waive its immunity and agree to be sued in federal court." *Id.* (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). In this case, neither party has alleged that the State of New York has in any way waived its immunity from suits arising under the FMLA. As such, the Court only addresses plaintiff's argument that Congress abrogated Eleventh Amendment immunity under the FMLA.

#### 2. Abrogation under the Eleventh Amendment

The United States Supreme Court, in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), considered the issue of Congress' power to abrogate the states' Eleventh Amendment immunity. In *Seminole*, the Court specifically held that Congress had no authority to abrogate immunity under the Eleventh Amendment when acting pursuant to the Indian or Interstate Commerce Clauses; rather, the power to abrogate exists only under section 5, the enforcement provision, of the Fourteenth Amendment. *Id.* at 65–66, 116 S.Ct. 1114. In so holding, the *Seminole* Court

overruled *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which held that acts taken by Congress pursuant to the Interstate Commerce Clause could, if sufficiently clear, abrogate Eleventh Amendment immunity. *Id.* at 19–20, 109 S.Ct. 2273. *Seminole* also set out precisely what Congress must do to abrogate Eleventh Amendment immunity.

■ Two requirements must be met. *Seminole,* 517 U.S. at 54, 116 S.Ct. 1114; *Close,* 125 F.3d at 36. First, Congress must have intended to abrogate immunity by providing " 'a clear legislative statement' " of its intent, " 'making its intention unmistakably clear in the language of the statute.' " *Seminole,* 517 U.S. at 54, 116 S.Ct. 1114 (quoting *Blatchford v. Native Village of Noatak and Circle Village,* 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) and *Dellmuth v. Muth,* 491 U.S. 223, 227–28, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989)). Second, Congress must have attempted to abrogate this immunity " 'pursuant to a valid exercise of power.' " *Id.* (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). In other words, Congress must have enacted the statute at issue using its enforcement powers under section 5 of the Fourteenth Amendment. *Seminole,* 517 U.S. at 62–63, 116 S.Ct. 1114.

### a. Legislative Intent

■ The FMLA expressly states that "[a]n action to recover the damages or equitable relief prescribed ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction ..." 29 U.S.C. § 2617(a)(2). The FMLA further incorporates the definition of "public agency" as it appears in the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 203(x). *See* 29 U.S.C. § 2611(4)(A)(iii). The FLSA defines "public agency" as including a State or any agency of a State. 29 U.S.C. § 203(x). The Second Circuit, addressing the FLSA, has held that this language functions as a clear statement of congressional intent to abrogate the states' immunity from suit under the Eleventh Amendment. *See Close,* 125 F.3d at 36. Accordingly, this Court, faced with

the identical language, is compelled to reach the same conclusion. We thus turn to the second prong of the *Seminole* test: to wit, whether Congress acted pursuant to a valid exercise of power.

### b. Congress' Power under Section 5 of the Fourteenth Amendment

■ To determine whether legislation is properly enacted pursuant to Congress' power under section 5 of the Fourteenth Amendment, courts ask three questions: 1) whether the statute "may be regarded as an enactment to enforce the Equal Protection Clause;" 2) whether it was " 'plainly adapted to that end;' " and 3) whether it "is not prohibited by but is consistent with 'the letter and spirit of the constitution.' " *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966) (quoting *M'Culloch v. State of Maryland,* 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819) (Marshall, C.J.)); *see Abril v. Commonwealth of Virginia,* 145 F.3d 182, 186, 1998 WL 255069, at *3 (4th Cir.) (applying *Katzenbach* test in determining whether Congress properly abrogated Eleventh Amendment immunity pursuant to section 5); *Mills v. State of Maine,* 118 F.3d 37, 45 (1st Cir.1997) (same); *Wilson–Jones v. Caviness,* 99 F.3d 203, 209 (6th Cir.1996) (same).

"The simplest way to meet [the first] requirement is for Congress to declare explicitly that the legislation is passed to enforce Fourteenth Amendment rights." *Wilson–Jones,* 99 F.3d at 210. In enacting the FMLA, Congress sought to promote the stability and economic security of the family "in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex" and to "promote the goal of equal employment opportunity for women and men." 29 U.S.C. § 2601(b)(4) and (5). The references to equal protection were based upon Congress' findings that

due to the nature of the roles of men and women in our society, the primary responsibility for family caretaking often falls on women, and such responsibility affects the working lives of women more than it af-

fects the working lives of men; and \*\*\* employment standards that apply to one gender only have serious potential for encouraging employers to discriminate against employees and applicants for employment who are of that gender.

*Id.* § 2601(a)(5)–(6). These statements show that the FMLA was at least ostensibly an attempt to enforce the Fourteenth Amendment's guarantee of equal protection.

The second prong of the *Katzenbach* test is whether the legislation is plainly adapted, "i.e, whether the means chosen by Congress fit the identified or hypothetical Fourteenth Amendment purpose." *Id.* In examining the "means chosen by Congress," we turn to the FMLA's substantive provisions. The statute provides a total of twelve weeks of leave during any one year to an eligible employee for the following purposes: (1) to care for a newborn or adopted son or daughter; (2) to care for a spouse, son, daughter or parent who has a "serious health condition;" or (3) because of a "serious health condition" that renders the employee unable to perform his or her job functions. 29 U.S.C. § 2612(a)(1)(A)–(D). Section 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." An eligible employee is one employed for at least twelve (12) months or 1,250 hours in the previous twelve (12) months with the employer from whom the employee seeks leave. 29 U.S.C. § 2611(2).

The issue then, is whether these provisions are a proper exercise of Congress' section 5 power "to enforce, by appropriate legislation," the Fourteenth Amendment's guarantee of equal protection. *See City of Boerne v. Flores,* 521 U.S. 507, ——, 117 S.Ct. 2157, 2162, 138 L.Ed.2d 624 (1997). The Court readily concludes they are not. The Equal Protection Clause mandates that similarly situated persons be treated alike, *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), and it is well-established that this mandate prohibits states in most instances from discriminating on the basis of sex. *See United States v. Virginia,* 518 U.S. 515, 534, 116

S.Ct. 2264, 135 L.Ed.2d 735 (1996). In determining whether Congress properly is enforcing this guarantee, "the line between [Congressional] measures that remedy or prevent unconstitutional actions and measures that make a substantive change in the governing law is not easy to discern..." *City of Boerne,* 521 U.S. at ——, 117 S.Ct. at 2164. The Supreme Court has made clear, however, that "[t]here must be a congruence or proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.; cf. Katzenbach,* 384 U.S. at 651, 86 S.Ct. 1717 (asking whether means chosen by Congress in enforcing Fourteenth Amendment guarantees are " 'plainly adapted to that end;' ") (quoting *M'Culloch,* 17 U.S. (4 Wheat.) at 421).

No such proportionality is present where Congress creates a statutory right to leave for all eligible employees, with the apparent purpose of remedying and deterring sex discrimination. *See, e.g., Thomson v. Ohio State Univ. Hosp.,* 5 F.Supp.2d 574, 1998 WL 241766 (S.D.Ohio) (observing that "[t]he creation by statue of an affirmative entitlement to leave distinguishes the FMLA from other statutory provisions designed to combat discrimination."). In other words, rather than enforcing the Equal Protection Clause, the FMLA attempts to define what equal protection means: twelve weeks of leave for eligible employees for the purposes enumerated in the statute. *See* 29 U.S.C. § 2612(a)(1)(A)–(D). It goes without saying that no such entitlement is found in any of the provisions of the Fourteenth Amendment, and "Congress does not enforce a constitutional right by changing what the right is." *City of Boerne,* 521 U.S. at ——, 117 S.Ct. at 2164.

The FMLA is incongruent with equal protection enforcement in yet another sense. "It is well established that a claimant under the Fourteenth Amendment's Equal Protection Clause ... must establish intentional discrimination." *Ricketts v. City of Hartford,* 74 F.3d 1397, 1407 (2d Cir.) (*citing McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)), *cert. denied,* —— U.S. ——, 117 S.Ct. 65, 136 L.Ed.2d 26 (1996). As the First Circuit recently observed, however, the FMLA's leave

provisions do not implicate the employer's state of mind:

> the employee need not show that the employer treated other employees less favorably, and an employer may not defend its interference with the FMLA's substantive rights on the ground that it treats all employees equally poorly without discriminating. In such cases, the employer's subjective intent is not relevant. The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave. Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.

*Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159, 1998 WL 248013, at *5 (1st Cir.). The Seventh Circuit too, has distinguished the FMLA from traditional statutes combating differential treatment in one form or another:

> the question in a discrimination case is whether the employer treated one employee worse than another on account of something (race, religion, sex, age, etc.) that a statute makes irrelevant... A statute such as the FMLA, however, creates substantive rights. A firm must honor statutory entitlements; when an employee sues, the firm may not defend by saying that it treated all employees identically. The FMLA requires an employer to accommodate rather than ignore particular circumstances.

*Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 712 (7th Cir.1997). Thus, to the extent the FMLA makes it a violation simply for an employer to fail to provide the statutory leave to an eligible employee, it reaches well into a realm of conduct not governed by the Equal Protection Clause.

The Court is cognizant of the Supreme Court's observation in *City of Boerne* that

> [l]egislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional and in-

trudes into "legislative spheres of autonomy previously reserved to that states." 521 U.S. at ——, 117 S.Ct. at 2163 (quoting *Fitzpatrick v. Bitzer,* 427 U.S. 445, 455, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). The FMLA, however, does more than prohibit certain conduct that is not unconstitutional. In granting an entitlement not mandated by the Equal Protection Clause itself, the FMLA goes beyond enforcement and "decrees the substance of the Fourteenth Amendment's restrictions on the States." *Id.* 117 S.Ct. at 2164. Because it does so, it is not "plainly adapted" to the end of enforcement, and therefore is not a proper exercise of Congress' section 5 power.

As to the last factor in the *Katzenbach* test, this Court's shares Judge Graham's concerns, discussed in *Thomson,* that the financial burdens imposed upon the states by the FMLA's requirements are inconsistent with notions of federalism and intrude into the contractual relationship between the state and its employees in a manner that runs afoul of the spirit of the Constitution. *See Thomson,* 5 F.Supp.2d at 581, 1998 WL 241766, at *7.

For all of these reasons, the Court concludes that Congress, in passing the FMLA, did not properly abrogate the states' Eleventh Amendment immunity. Accordingly, the official capacity claims against defendants are dismissed for lack of subject matter jurisdiction.

### C. The Individual Defendants

The Court need not address the question of whether individuals may be sued under the FMLA, because assuming they can, defendants are entitled to Eleventh Amendment immunity on the individual capacity claims as well.

A plaintiff is entitled to seek prospective injunctive relief against a state official in his individual capacity without running afoul of the Eleventh Amendment. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). A plaintiff, however, is not entitled to seek retroactive relief in the form of money damages against an individual when those monies will necessarily be paid out of

the State treasury. The Supreme Court has held "that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman,* 415 U.S. at 663, 94 S.Ct. 1347 (citing *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946)).

 Under the FMLA, plaintiff would be entitled to damages equal to lost wages and benefits, interest, and appropriate equitable relief. 29 U.S.C. § 2617. To the extent that plaintiff is seeking damages in the form of back pay, those damages are barred by the Eleventh Amendment. *Dwyer v. Regan,* 777 F.2d 825, 836 (2d Cir.1985) ("claim for back-pay seeks 'the payment of . . . money which . . . should have been paid, but was not.' If these sums should have been paid, they should have been paid by the State, not by [a defendant] in his individual capacity, and an award of back pay would necessarily have to be satisfied from State funds.") (citations omitted), *modified on other grounds,* 793 F.2d 457 (2d Cir.1986).

Lastly, New York State Public Officers Law § 17(3) requires the state to indemnify its employees for the amount of any judgment provided that the act or omission which gave rise to the judgment "occurred while the employee was acting within the scope of his public employment or duties." Because plaintiff does not allege that defendants were acting outside the scope of their authority when denying plaintiff benefits under the FMLA, it is evident that any damage award would necessarily be paid out of the state treasury. *See, e.g., Mohammed v. D.H. Farney Contractors,* 881 F.Supp. 110 (S.D.N.Y. 1995) (citing to § 17 and holding that claim against state employee was, in essence, claim against the state, and accordingly, was barred by the Eleventh Amendment absent any evidence that state employee was acting outside course of his employment). Consequently, any monetary damages plaintiff seeks against defendants in their individual capacities are barred by the Eleventh Amendment.

## III. CONCLUSION

For all the foregoing reasons, it is hereby

**ORDERED,** that defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED,** and the Complaint is **DISMISSED.**

**IT IS SO ORDERED.**