**Warren H. DRIESSE, Plaintiff,**

**v.**

**FLORIDA BOARD OF REGENTS, Defendant.**

**No. 97-1146-CIV-ORL-18A.**

United States District Court, M.D. Florida, Orlando Division.

Oct. 7, 1998.

Brandon Scott Peters, Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, FL, for Warren H. Driesse.

Locksley O. Wade, Charlann J. Sanders, Attorney General's Office, Dept. of Legal Affairs, Tampa, FL, for University of Central Florida/Florida Board of Regents.

Henry A. Gill, Jr., Thomas Edward Allison, Attorney General's Office, Dept. of Legal Affairs, Tampa, FL, for Alice Hansen.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiff Warren H. Driesse ("Driesse") brings the instant action against defendant Florida Board of Regents alleging that the defendant discriminated against him on the basis of his age, disability and medical condition in violation of both federal and state law. In his amended complaint, the plaintiff seeks lost wages, compensatory, liquidated and punitive damages, interest, costs, and attorneys' fees. Plaintiff's state claims were dismissed by this court for lack of subject matter jurisdiction on April 6, 1998. The remaining federal claims are presently before the court on the defendant's motion for summary judgment to which the plaintiff has responded in opposition. Following a review of the case file and relevant law, the court concludes that the defendant's motion should be granted in part and denied in part.

## I. Factual Background

Driesse was born on May 17, 1931 and was hired by the University of Central Florida ("UCF") on February 15, 1993, as a Computer Support Specialist. Driesse's employment continued without incident until May 2, 1996, when he was diagnosed with prostrate cancer. He immediately informed his supervisor, Ms. Alice Hansen ("Hansen"), of his condition and was granted a leave of absence to undergo the necessary surgery. On June 26, 1996, UCF terminated Driesse's employment while he was still recovering from his prostrate surgery. The plaintiff protested and was reinstated into his job on September 5, 1996. Following his reinstatement, however, the plaintiff alleges that his hours were reduced and that his tasks were significantly altered. In addition, he claims that his former duties were awarded to a much younger employee. After filing three formal charges of discrimination with the appropriate agencies, plaintiff's pre-termination hours of employment were restored.

A few months later, in February of 1997, Hansen informed Driesse that his job performance was unsatisfactory and placed a "Letter of Instruction" indicating the same in his personnel file. In June of 1997, the plaintiff began experiencing painful swelling in his lower extremities. Driesse's physician informed the defendant that the removal of plaintiff's pelvic lymph system in conjunction with his prostrate cancer surgery rendered him incapable of standing on his feet for long periods of time. On August 20, 1997, the plaintiff requested reasonable accommodation for his medical complications but was turned down by the defendant. The plaintiff exhausted all of his administrative remedies and this present suit followed.

## II. Legal Discussion

### A. *Summary Judgment Standards*

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. *See Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548; Fed.R.Civ.P. 56(c).

"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### B. *The Merits of Defendant's Motion*

Plaintiff's remaining claims arise under the Age Discrimination in Employment Act, 29 U.S.C. § 630(b) ("ADEA"), the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2612, 2624 ("FMLA"), and the Americans with Disabilities Act, 42 U.S.C. § 12112 ("ADA").

The defendant argues that summary judgment should be granted because the ADEA and FMLA claims are barred by the Eleventh Amendment to the United States Constitution and the plaintiff is not disabled for purposes of his ADA claim. The court will first address the defendant's Eleventh Amendment immunity argument with respect to the ADEA and FMLA and then the court will analyze the defendant's arguments against the plaintiff's ADA claim.

*1) Driesse's ADEA claim (Count I)*

The defendant argues that the Eleventh Amendment bars an action against a state under the ADEA and therefore this court lacks subject matter jurisdiction to hear plaintiff's ADEA claim. Due to the recent Eleventh Circuit decision in *Kimel v. State of Florida,* 139 F.3d 1426 (11th Cir.1998), the plaintiff concedes that the Eleventh Amendment precludes his ADEA claim against Florida Board of Regents. Accordingly, the court grants defendant's motion for summary judgment with respect to Driesse's ADEA claim (Count I).

*2) Driesse's FMLA claim (Count V)*

In Count V of his amended complaint, the plaintiff sues the defendant for denial of benefits under the FMLA. Defendant argues that it is immune from suit in federal court for violations of the FMLA because of the Eleventh Amendment.

The Eleventh Amendment states that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. This provision prohibits suits against a state by both its own citizens and citizens of other states, *see Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), and suits against instrumentalities of the state where they are "arm[s] of the State." *Regents of University of California v. Doe,* 519 U.S. 425, ——, 117 S.Ct. 900, 903, 137 L.Ed.2d 55 (1997). Federal courts, however, may entertain suits by private citizens against states if the state has waived immunity or Congress has overridden it by abrogation. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Plaintiff does not argue that Florida has consented to suit, but rather that Congress has abrogated Florida's Eleventh Amendment immunity to suit in federal court for violations of the FMLA.

In *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court stated that in determining whether Congress has successfully abrogated a state's sovereign immunity, two factors must be assessed: (1) whether Congress provided "a clear legislative statement" of its intent to abrogate immunity; and (2) whether Congress acted under proper constitutional authority. *See Seminole,* 517 U.S. at 54, 116 S.Ct. 1114.

Based on the Eleventh Circuit's reasoning in *Kimel,* Congress did not provide a clear statement of intent to abrogate sovereign immunity in the FMLA. The unmistakable intent to abrogate immunity must be found within the language of the statute itself. *See Kimel,* 139 F.3d at 1430 (citing *Dellmuth v. Muth,* 491 U.S. 223, 228, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989)). The Supreme Court has stated that an examination of legislative history is unnecessary and only the text of the statute needs to be considered in deciding whether there is intent to abrogate. *See Dellmuth,* 491 U.S. at 228, 109 S.Ct. 2397. Therefore, the court will look only to the language of the FMLA to determine whether Congress provided the requisite clear statement of intent to abrogate.

The FMLA provides for suits "against any employer (including a public agency) in any Federal or State Court of competent jurisdiction." 29 U.S.C. § 2617(a)(2). In section 29 U.S.C. § 2611(4)(A)(iii), the FMLA defines employers to include "any 'public agency,' as defined in section 203(x) of this title." Section 203(x) is the definition section of the Fair Labor Standards Act ("FLSA") and it defines "public agency" as "the government of a State or political subdivision thereof; any agency of . . . a State, or a political subdivision of a State." 29 U.S.C. § 203(x). However, as the

*Kimel* court held, the inclusion of states and their agencies within the definition of "employer" does not provide the necessary clear statement of intent to allow suits against states by private citizens in federal courts. *See Kimel,* 139 F.3d at 1432. Supreme Court precedent also indicates that merely including states in the definition of employer does not provide the unequivocal language needed to abrogate immunity. *See Employees of the Dept. of Public Health and Welfare v. Dept. of Public Health and Welfare, Missouri,* 411 U.S. 279, 281, 93 S.Ct. 1614, 1617, 36 L.Ed.2d 251 (1973) (holding that the amendment to the FLSA which included states in the definition of employer did not provide an unequivocal declaration of abrogation).

Plaintiff argues that an unmistakable clear statement of intent to abrogate is found when the definition section is read with the FMLA's enforcement section. As stated above, the enforcement section provides that an action "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction ..." 29 U.S.C. § 2617(a)(2). While these sections establish that FMLA suits may be brought in federal court, "[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Seminole,* 517 U.S. at 54, 116 S.Ct. 1114. In *Kimel,* the court found that Congress did not abrogate immunity under the ADEA by defining employers to include states in one section of the statute while providing for enforcement in courts of competent jurisdiction in another section. *See Kimel,* 139 F.3d at 1431 ("For abrogation to be unmistakably clear, it should not first be necessary to fit together various sections of the statute to create an expression from which one might infer an intent to abrogate."). Plaintiff argues that by construing the definition section with the enforcement provision, the intent to abrogate is made clear. The need to construe one section of a statute with another, however, is an indication that there is no unequivocal declaration of intent. *See id.*

Even when the sections are read together, they do not amount to a clear statement of abrogation. There is still no mention of Eleventh Amendment immunity. *See Dellmuth,* 491 U.S. at 230, 109 S.Ct. 2397 (stating that the statute's failure to mention the Eleventh Amendment or sovereign immunity is evidence that a clear intention to abrogate is not present). This is in contrast to the ADA which states that "[a] State shall not be immune under the eleventh amendment ..." 42 U.S.C. § 12202. While a permissible inference could certainly be drawn from the language of the FMLA that states were intended to be defendants in suits brought in federal court, a permissible inference does not provide the unequivocal statement that is required. *See Kimel,* 139 F.3d at 1432 (citing *Dellmuth,* 491 U.S. at 230, 109 S.Ct. 2397). Therefore, Congress did not clearly express an intention to abrogate immunity in the FMLA and plaintiff's claim against the defendant is barred by the Eleventh Amendment.

Assuming arguendo that the first prong of the *Seminole* test could be met, summary judgment would still be appropriate on Count V because the FMLA fails the second prong of the test. In addition to providing a clear statement of intent, Congress must act within its constitutional authority in order to abrogate sovereign immunity. *See Seminole,* 517 U.S. at 62–63, 116 S.Ct. 1114. As indicated in *Seminole,* Congress can only abrogate immunity if it enacts legislation pursuant to its authority under § 5 of the Fourteenth Amendment of the United States Constitution. *See id.* at 58, 116 S.Ct. 1114. A statute is properly enacted pursuant to § 5 of the Fourteenth Amendment if: (1) it may be regarded as an enactment to enforce the Equal Protection Clause; (2) it is plainly adapted to that end; and (3) it is not prohibited by but is consistent with the letter and spirit of the constitution. *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); *see also Kimel,* 139 F.3d at 1434 (Hatchett, C.J., concurring in part and dissenting in part).

In order to satisfy the first of the *Katzenbach* factors, the statute should indicate that it is being passed to enforce Fourteenth Amendment rights. *See Thomson v. Ohio State University Hospital,* 5 F.Supp.2d 574, 578 (S.D.Ohio 1998) (citing *Wilson–*

Jones v. Caviness, 99 F.3d 203, 210 (6th Cir.1996)). Section 2601(b) of the FMLA states that entitlement to leave is to be provided:

> (4) ... in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons ... on a gender-neutral basis; and (5) to promote the goal of equal employment opportunity for women and men, pursuant to such clause.

29 U.S.C. § 2601(b)(4) and (5). This language demonstrates that, on its face, the FMLA is an attempt to enforce the Equal Protection Clause. Although a district court recently found these sections to be "no more than self-serving declarations" inserted into the statute in order to invoke § 5 of the Fourteenth Amendment, *see Garrett v. Bd. of Trustees of University of Alabama,* 989 F.Supp. 1409, 1412 (N.D.Ala.1998), they are enough to fulfill the first requirement of the *Katzenbach* test.

In order to satisfy the second prong of the test, the statute must be "plainly adapted" to meet Congress' purported Fourteenth Amendment purpose. *See Katzenbach,* 384 U.S. at 651, 86 S.Ct. 1717. This factor is similar to the analysis the Supreme Court undertook in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). In *City of Boerne,* the Supreme Court stated that the Fourteenth Amendment empowers Congress to enact legislation to enforce the Equal Protection Clause. *See id.* 117 S.Ct. at 2164. Congress, however, "cannot decree the substance of the Fourteenth Amendment's restrictions on the States" or create rights that the Constitution did not guarantee. *See id.* at 2164, 2170. In order to guard against legislation that is substantive rather than remedial in nature, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 2170.

The FMLA provides employees with reasonable time off from work for medical reasons, the birth or adoption of a child, or the care of a sick family member without the fear of losing their job. *See* 29 U.S.C. § 2601(b)(2). Congress sought to prevent employers from discriminating against employees, usually female employees, who request a leave of absence to perform parenting or caretaking functions. *See id.* at § 2601(a)(5) and (6). In addition to entitling employees to take reasonable leave, the FMLA also lists "preserving family integrity" and "promot[ing] the goal of equal employment opportunity" as its purposes. *See id* at § 2601(b). Thus the regulation appears to have an economic purpose (providing reasonable leave) and an equal protection purpose. In order to satisfy the *Katzenbach* and *Flores* tests, the means adopted in the FMLA must be plainly adapted or congruent and proportional to the purpose of preventing gender discrimination.

The FMLA provides employees with an affirmative entitlement to twelve weeks of leave for the reasons set forth in the statute. Congress seems to be suggesting that this entitlement is necessary under the Equal Protection Clause in order to prevent gender discrimination. Thus, the FMLA mandates that not only are employers required to treat leave requests the same for both men and women, but they are required to provide a valuable economic benefit in the form of twelve weeks of leave. *See Thomson,* 5 F.Supp. 2d at 580. "This is patently the sort of substantive legislation that exceeds the proper scope of Congress' authority under § 5." *Id.* at 579.

The FMLA also cannot be considered congruent and proportional to the goal of preventing gender discrimination in the workplace because of existing legislation that already addresses this goal. *See id.* at 580. If an employee is denied leave solely because of his or her gender, such discrimination is actionable under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000a et seq. Furthermore, if the employer is a state, an employee can bring an action against state officials under 42 U.S.C. § 1983 for the violation of rights guaranteed by the Equal Protection Clause. *See id.* (stating that other available avenues of legal recourse for equal protection violations make the FMLA unnecessary).

By providing a valuable economic benefit to employees, Congress enacted "substantive" legislation and exceeded its enforcement powers under § 5 of the Fourteenth Amendment. Congress did this even though legislation was already in place that was aimed at preventing disparate treatment in the workplace. "[T]he requirement that there is a 'congruence and proportionality between the injury to be prevented and the means adopted to that end'" has not been met. *See id.* (quoting *City of Boerne,* 521 U.S. at ——, 117 S.Ct. at 2176). Therefore, the court finds that the FMLA was not properly enacted under the authority of § 5 of the Fourteenth Amendment. Because the FMLA was not enacted pursuant to § 5, Congress cannot abrogate states' Eleventh Amendment immunity and defendant's motion for summary judgment on plaintiff's FMLA claim must be granted.

As the district court in *Thomson* stated, there are also problems meeting the third *Katzenbach* requirement that the legislation be consistent with the spirit of the Constitution. *See id.* In addition to granting an economic benefit to employees, the FMLA imposes a financial burden on employers. If the FMLA was applicable to states, it would require state employers to find replacements for employees who are on leave or suffer a decrease in productivity as a result of a reduced workforce. *See id.* at 581. Requiring state employers to provide a benefit totally outside of the employment agreement reached between the state and the employee "would be an inappropriate interference into a traditional area of state sovereignty which runs afoul of the spirit of the Constitution and the concepts of federalism which it contains." *Id.*

Plaintiff argues that the court should follow the decisions of three district courts that have considered the issue and found that Congress did abrogate sovereign immunity under the FMLA. *See Jolliffe v. Mitchell,* 986 F.Supp. 339 (W.D.Va.1997); *Biddlecome v. University of Texas,* 1997 WL 124220 (S.D.Tex.1997); *Knussman v. State of Maryland,* 935 F.Supp. 659 (D.Md.1996). All of these cases, however, were decided outside of the Eleventh Circuit and the court does not find their reasoning persuasive.

The courts in *Jolliffe* and *Biddlecome* found Eleventh Amendment immunity to be abrogated based solely on the language of the FMLA. Neither case applied the *Katzenbach* test and both relied on the stated purposes in the FMLA in finding that it was properly enacted under the Fourteenth Amendment. *Jolliffe,* although decided after *City of Boerne,* makes no mention of that case. The district court in *Knussman* found that Congress had provided unequivocal evidence of its intent to abrogate immunity but did not address the issue of whether Congress had acted pursuant to a valid exercise of power. Therefore, because those cases did not apply the analysis required by the Supreme Court, the court declines to follow their holdings.

The court concludes that based on the reasoning in *Kimel,* Congress did not provide unequivocal and textual evidence of its intent to abrogate immunity in the FMLA. Furthermore, the court joins the opinions of the district courts in *Thomson* and *Garrett* in finding that the FMLA was not enacted under Congress' § 5 enforcement powers. Therefore, Congress has not abrogated states' Eleventh Amendment immunity to suit under the FMLA and defendant's motion for summary judgment on plaintiff's FMLA claim must be granted.

*3) Driesse's ADA claim (Count III)*

In order to qualify for relief under the ADA, the plaintiff must establish a prima facie case of discrimination by demonstrating that "(1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability." *Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 910 (11th Cir.1996). In its motion for summary judgment, the defendant does not seem to argue that Driesse was not qualified for his position or was not discriminated against because of his medical condition. The defendant instead focuses its argument on whether the plaintiff was disabled for the purposes of the ADA.

The ADA defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). A person's abilities are "substantially limited" when they are "significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the ... average person in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

The plaintiff argues that since his surgery for prostrate cancer, he is unable to walk or stand for long periods of time. (Doc. 39, Driesse Aff. at 5). He states in his affidavit that he is "unable to stand for more than approximately an hour at a time without significant discomfort and cannot walk for more than half an hour at a time without extreme discomfort." *Id.* The Equal Employment Opportunity Commission's regulations define "major life activities" to include walking and standing. *See* 29 C.F.R. app. pt. 1630, § 1630.2(I); *see also Gabriel v. City of Chicago,* 9 F.Supp.2d 974, 982 (N.D.Ill.1998); *Nieves v. Individualized Shirts,* 961 F.Supp. 782, 794 (D.N.J.1997). Plaintiff also offers the affidavit of his doctor which states that his condition, lymphatic edema, causes painful swelling in his legs and feet and is most likely the result of the surgery he underwent to treat his prostrate cancer. (Doc. 38, Cascardo Aff. at 2). Furthermore, Dr. Cascardo states that plaintiff's condition is permanent and is "aggravated by prolonged standing or walking." *Id.* Defendant has offered no evidence to contradict plaintiff's affidavit that he is substantially limited in walking and standing. Therefore, Driesse has created a question of fact as to whether his condition substantially limits the major life activity of walking or standing. This question of fact precludes summary judgment.

In his amended complaint, the plaintiff asserts a claim for punitive damages under the ADA. In his response to defendant's motion for summary judgment, the plaintiff concedes that he is not entitled to punitive damages for claims brought under the ADA against a state. *See e.g. Biggs v. State of Florida Board of Regents,* 1998 WL 344349 (N.D.Fla.). Accordingly, plaintiff's claims for punitive damages under the ADA are dismissed.

III. Conclusion

For the reasons set forth above, the court **GRANTS** the defendant's motion for summary judgment on plaintiff's ADEA claim (Count I) and FMLA claim (Count V). The court **DENIES** the defendant's motion for summary judgment on the plaintiff's ADA claim (Count III) because the plaintiff has created a question of fact as to whether he is disabled for purposes of the ADA. Finally, the plaintiff's claim for punitive damages under the ADA is **DISMISSED WITH PREJUDICE.** Thus, only Count III remains in the present action and the case shall proceed accordingly.