Laro v. NH                          CV-98-547-M    03/29/00

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Stephen Laro,
    Plaintiff

    v.                                    Civil No. 98-547-M
                                          Opinion No. 2000 DNH 082
State of New Hampshire,
    Defendant


**O R D E R**


Stephen Laro was employed by the State of New Hampshire as a computer specialist for the New Hampshire Retirement System ("State"). In early 1998, Mr. Laro underwent heart bypass surgery. Due to his physical condition, the State understandably placed him on medical leave in accordance with the provisions of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654. That leave began on March 6, 1998.


The State's Division of Personnel had previously issued Personnel Memorandum 94-7, dated February 3, 1994, announcing policies and procedures designed to implement the FMLA. Under

the FMLA a state employee, like Laro, is entitled to take up to twelve weeks of unpaid leave in a twelve month period to care for his or her own serious health condition. See 29 U.S.C. § 2612(a)(1)(D). In Personnel Memorandum 94-7, the State gave as examples of qualifying serious health conditions, "heart conditions requiring heart bypass . . . operations." Personnel Memorandum 94-7, at 2 (February 3, 1994).

For reasons that are not clear, the State later terminated Laro's employment (by letter dated May 21, 1998) before Laro's twelve weeks of medical leave expired. Laro says he was ready, willing, and medically able to return to work within that twelve week period. Subsequently, Laro sued on grounds that the State violated his rights under the FMLA.

The State now moves to dismiss Laro's complaint, seizing upon a recent and decided shift in the Supreme Court's Eleventh Amendment jurisprudence. In a series of recent cases, starting with Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996),

2

the Supreme Court has made it clear (albeit over vigorous dissent) that Congress' power to authorize suits by private parties against unconsenting states is limited to that authority conferred by Section 5 of the Fourteenth Amendment. See, e.g., Kimel v. Florida Board of Regents, 120 S.Ct. 631 (2000); College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 119 S.Ct. 2219 (1999); Alden v. Maine, 527 U.S. 706 (1999). Not surprisingly, states are now reexamining their legal obligations under federal statutes once routinely assumed to be valid exercises of congressional legislative authority, under the Commerce Clause for example. This suit follows that course – the State of New Hampshire challenges the FMLA as legislation exceeding Congress' Section 5 authority.

The State says Laro's one count complaint alleging violations of the FMLA must be dismissed for one simple reason – the State is immune from suit, under the specific provisions of the FMLA invoked by Laro, because Congress exceeded its power to enact remedial legislation under Section 5 of the Fourteenth

Amendment when it purported to subject states to the requirements of the Family and Medical Leave Act.  Thus, it argues, the Eleventh Amendment shields it from suit under the FMLA in federal court unless it first consents, which it has not done.

**Discussion**

I.   Congressional Authority to Abrogate States' Immunity.

The Eleventh Amendment to the Constitution bars federal courts from hearing claims brought against a state by a citizen of another state or foreign country.  It provides that:

> The judicial power of the United States shall not be
> construed to extend to any suit in law or equity,
> commenced or prosecuted against one of the United
> States by citizens of another state, or by citizens or
> subjects of any foreign state.

U.S. Const. amend. XI.  The scope of the Eleventh Amendment, however, has long been recognized to extend as well to suits brought in federal court against a state by its own citizens, and to embrace the notion that each state is a sovereign entity.  See Edelman v. Jordan, 415 U.S. 651, 662-63 (1974) ("While the

4

[Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). See also Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) ("[I]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.") (quoting Hans v. Louisiana, 134 U.S. 1, 13 (1890)).

There are, however, circumstances under which Congress may validly abrogate Eleventh Amendment immunity and afford citizens the right to pursue claims against an unconsenting state in federal court. Congress may do so when it "has 'unequivocally expressed its intent to abrogate the immunity'; and second, . . . has acted 'pursuant to a valid exercise of power.'" Seminole Tribe, 517 U.S. at 55 (citations omitted). See also City of Boerne v. Flores, 521 U.S. 507, 518-20 (1997). The Supreme Court has made it reasonably clear that congressional authority to

5

abrogate the states' Eleventh Amendment immunity is rooted in Section 5 of the Fourteenth Amendment.  See Seminole Tribe, 517 U.S. at 66 (overruling Pennsylvania v. Union Gas Co., 491 U.S. 1 (1989), and concluding that the Commerce Clause does not vest Congress with authority to abrogate states' Eleventh Amendment immunity).

Keeping those principles in mind, the court must determine: (1) whether the FMLA includes an unequivocal expression of Congressional intent to abrogate states' Eleventh Amendment immunity; and, if so, (2) whether Congress exceeded its Section 5 authority when it subjected the states to those provisions of the FMLA at issue in this case.

A.    The FMLA and Congressional Intent to Abrogate
      States' Eleventh Amendment Immunity.

Plaintiff says that Congress unequivocally expressed its intent to abrogate Eleventh Amendment immunity by including within the FMLA's definition of "employer" the "Government . . . of a state or political subdivision thereof; [and] any agency of

6

. . . a state, or a political subdivision of a state." 29 U.S.C. § 203(x). Plaintiff's argument is compelling. See, e.g., Jolliffe v. Mitchell, 986 F.Supp. 339, 342-43 (W.D.Va. 1997) (holding that Congress expressed an unequivocal intention to abrogate states' Eleventh Amendment immunity under the FMLA by including states and state political subdivisions within the definition of "employer"); Knussman v. State of Maryland, 935 F.Supp. 659, 663 (D.Md. 1996) ("This explicit inclusion of states and their political subdivisions in the statute's definition of 'employer' constitutes 'unequivocal and textual' evidence that Congress intended to subject states and their political subdivisions to suits by private citizens in federal court for violations of the FMLA.").

And, in Kimel v. Florida Board of Regents, 120 S.Ct. 631 (2000), the Supreme Court determined that identical definitional provisions used in the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. (making it unlawful for an employer to discriminate on the basis of age) adequately

7

disclosed Congress' intent to subject states to suits by individuals. The "simple but stringent test," requiring that Congressional intent to abrogate the states' constitutionally secured immunity from suit in federal court be made unmistakably clear in the language of the statute, was deemed met. As in Kimel, the plain language of the FMLA, taken as a whole, clearly demonstrates Congress' intent to subject states to suit by their employees for violations of the FMLA.

B.  Congressional Authority to Abrogate States'
    Eleventh Amendment Immunity under the FMLA.

Having concluded that the FMLA contains a clear statement of Congress' intent to abrogate Eleventh Amendment immunity (including that sovereign immunity existing by "constitutional design"[1]), the next question is whether Congress exceeded its authority under Section 5 of the Fourteenth Amendment when it imposed the FMLA on the states.

---

[1] See Alden v. Maine, 119 S.Ct. 2240, 2256 (1999); Kimel, 120 S.Ct. 631, 643 (2000).

8

Section 5 of the Fourteenth Amendment provides that,

"Congress shall have power to enforce by appropriate legislation,

the provisions of this article."  U.S. Const. amend. XI, § 5.

Interpreting the meaning and scope of Section 5's language, the

Supreme Court has held that, under appropriate circumstances,

Section 5 empowers Congress to abrogate the states' sovereign

immunity:

> In Fitzpatrick v. Bitzer, 427 U.S. 445 (1976), we
> recognized that 'the Eleventh Amendment, and the
> principle of state sovereignty which it embodies, are
> necessarily limited by the enforcement provisions of §
> 5 of the Fourteenth Amendment.'  Id., at 446.

Kimel, 120 S.Ct. at 644.

In determining whether Congress has acted within its

authority under Section 5, and has validly abrogated Eleventh

Amendment immunity, reviewing courts must consider three distinct

issues: whether the challenged statute "may be regarded as an

enactment to enforce the Equal Protection Clause, whether it is

'plainly adapted to that end,' and whether it is not prohibited

9

by but is consistent with 'the letter and spirit of the Constitution.'" <u>Katzenbach v. Morgan</u>, 384 U.S. 641, 651 (1966) (citation omitted).

When it enacted the FMLA, Congress expressed its desire to accomplish the following goals:

(1)    to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity;

(2)    <u>to entitle employees to take reasonable leave for medical reasons</u>, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition;

(3)    to accomplish the purposes described in paragraph (1) and (2) in a manner that accommodates the legitimate interests of employers.

29 U.S.C. § 2601(b)(1), (2), and (3) (emphasis supplied).

Although there is some earlier contrary precedent, every federal court that has considered the matter since 1998 is in agreement that Congress exceeded its Section 5 authority when it

10

applied the FMLA to the states.  See <u>Garrett v. Univ. of Alabama</u> <u>at Birmingham Bd. of Trustees</u>, 193 F.3d 1214 (11th Cir. 1999), <u>aff'g</u> 989 F.Supp. 1409 (N.D. Ala. 1998); <u>Darby v. Hinds County</u> <u>Dept. of Human Services</u>, 83 F. Supp. 2d 754 (S.D. Miss. 1999); <u>Cohen v. State of Nebraska</u>, 83 F. Supp. 2d 1042 (D. Neb. 2000); <u>Kilvitis v. County of Luzerne</u>, 52 F. Supp. 2d 403 (M.D. Pa. 1999); <u>Sims v. Univ. of Cincinnati</u>, 46 F. Supp. 2d 736 (S.D. Ohio 1999); <u>Driesse v. Florida Board of Regents</u>, 26 F. Supp. 2d 1328 (M.D. Fla. 1998); <u>McGregor v. Goord</u>, 18 F. Supp. 2d 204 (N.D.N.Y. 1998); <u>Thompson v. Ohio State Univ. Hosp.</u>, 5 F. Supp. 2d 574 (S.D. Ohio 1998).

This court also agrees that, at least to the extent the FMLA grants all state employees an enforceable substantive right to twelve weeks of unpaid leave to resolve personal medical problems, Congress exceeded its Section 5 authority.[2]  Under the

---

[2]     This case does not raise, nor does the court address, the issue of whether Congress acted within its Section 5 authority in abrogating states' Eleventh Amendment immunity with regard to the FMLA's other provisions, such as, for example, its requirement that state employers provide employees with 12 weeks

11

tests established by the Supreme Court in <u>Katzenbach</u> and <u>City of</u> <u>Boerne</u>, it is plain that the FMLA falls short. Although this issue has been recently and thoroughly addressed in a number of other cases, brief review and discussion is warranted.

    1. <u>Does the FMLA Represent Action by Congress to Enforce</u> <u>Provisions of the Equal Protection Clause</u>?

In enacting the FMLA, Congress made clear that employers (including states) are required to provide qualifying employees with leave:

    (4)    in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) and for compelling family reasons, on a gender-neutral basis; and

    (5)    to promote the goal of equal employment opportunity for women and men, pursuant to such clause.

---

of leave coincident with the birth or adoption of a child.

12

29 U.S.C. § 2601(b)(4) and (5).  Given that language, "the FMLA may be regarded, on its face, as an attempt to enforce the Equal Protection Clause."  Thompson, 5 F. Supp. 2d at 578.  Thus, the first element of the Katzenbach test is met.


   2.   Is the FMLA "Plainly Adapted" to Enforce the Provisions
        of the Fourteenth Amendment?

The Supreme Court recently explained that, in order to satisfy the second element of the Katzenbach test, legislation must be remedial in nature.  That is to say, Congress may only enact legislation to enforce constitutional rights; it may not create substantive constitutional rights.  See City of Boerne v. Flores, 521 U.S. at 519 ("Congress' power under § 5 . . . extends only to 'enforcing' the provisions of the Fourteenth Amendment. . . . The design of the Amendment and the text of § 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States."); Kimel, 120 S.Ct. at 644 ("The ultimate interpretation and determination of the Fourteenth Amendment's substantive meaning remains the province of the

13

Judicial Branch.") (citations omitted). This principle can be traced to the earliest opinions of the Supreme Court. See City of Boerne, 521 U.S. at 529 ("If Congress could define its own powers by altering the Fourteenth Amendment's meaning, no longer would the Constitution be 'superior paramount law, unchangeable by ordinary means.' It would be 'on a level with ordinary legislative acts, and, like other acts, . . . alterable when the legislature shall please to alter it.'") (quoting Marbury v. Madison, 1 Cranch 137, 177 (1803)).

So, Section 5 of the Fourteenth Amendment vests Congress with the authority to "make the substantive constitutional prohibitions against the States effective," City of Boerne, 521 U.S. at 522, but does not authorize Congress to define or expand the scope of rights protected by the Constitution. See Garrett v. University of Alabama, 193 F.3d 1214, 1217 (11th Cir. 1999). In short, legislation enacted pursuant to Section 5 must be designed to remedy some historical practice that runs afoul of

the Fourteenth Amendment's Equal Protection Clause, such as gender discrimination in the provision of employment benefits.

The Supreme Court added that, for legislation to constitute a valid exercise of Congress' remedial authority under Section 5, there must also be a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." City of Boerne, 521 U.S. at 520. See also College Savings Bank v. Florida Prepaid Postsecondary Edu. Expense Bd., 119 S.Ct. at 2224 ("We made clear in City of Boerne v. Flores, that the term 'enforce' [in § 5 of the Fourteenth Amendment] is to be taken seriously - that the object of valid § 5 legislation must be the carefully delimited remediation or prevention of constitutional violations."). Consequently, in order to validly abrogate the States' Eleventh Amendment immunity, Congress must also "identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct." Florida Prepaid

<u>Postsecondary Edu. Expense Bd. v. College Savings Bank</u>, 119 S.Ct. 2199, 2207 (1999).

The FMLA's personal medical leave provision fails to satisfy those requirements.  First, the legislation is not merely remedial; it goes well beyond addressing gender discrimination in the provision of employment benefits, creating and vesting state employees with substantive leave rights.  In so doing, the FMLA necessarily imposes upon state employers corresponding substantive obligations they previously did not have.

> The creation by statute of an affirmative entitlement to leave distinguishes the FMLA from other statutory provisions designed to combat discrimination.  In effect, Congress, inasfar as it purports to rely on the Fourteenth Amendment as the basis of the FMLA, is <u>attempting to dictate that the Equal Protection Clause of the Fourteenth Amendment requires that employees be furnished twelve weeks of leave per year</u> for the reasons set forth in the act.  This is patently the sort of substantive legislation that exceeds the proper scope of Congress' authority under § 5.

<u>Thompson</u>, 5 F. Supp. 2d at 579 (emphasis supplied).  <u>Accord</u> <u>Kilvitis</u>, 52 F. Supp. 2d at 409-10; <u>Sims</u>, 46 F. Supp. 2d at 739-

16

40; Driesse, 26 F. Supp. 2d at 1333; McGregor, 18 F. Supp. 2d at 208-09.

Additionally, the FMLA fails to meet the requirement of "congruence and proportionality." City of Boerne, 521 U.S. at 520. Again, the Thompson court resolved this issue correctly and succinctly, observing that:

> The congruity and proportionality of the FMLA to the purposes stated by Congress related to the Fourteenth Amendment must be considered in light of the substantial steps already taken by Congress to achieve these goals. An employee who is treated inequitably in the granting or availability of leave time on the basis of his or her gender suffers discrimination which is actionable under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, et seq. Moreover, if the employer is a state or an instrumentality thereof, then the employee could opt to proceed against the employer-state officials in their official capacities under 42 U.S.C. § 1983 to vindicate, with appropriate equitable relief, his or her rights under the Equal Protection Clause directly. . . . In other words, not only is the affirmative entitlement created by the FMLA disproportionate in that it creates rights instead of just protecting the right of equal treatment under the Equal Protection Clause, but it is also unnecessary because employees of the state already have available a direct avenue of legal recourse for deprivations of equal protection. Congress has already met the legitimate goals of remedying and preventing

> constitutional violations of this type by its passage
> of prior legislation.

Thompson, 5 F. Supp. 2d at 580. See also Kilvitis, 52 F. Supp. 2d at 409 ("While one of the express purposes of the FMLA is to eliminate gender discrimination in the context of the workplace, it goes beyond its stated goal by imposing substantive employment conditions."); Driesse, 26 F. Supp. 2d at 1333 ("Thus, the FMLA mandates that not only are [state] employers required to treat leave requests the same for both men and women, but they are required to provide a valuable economic benefit in the form of twelve weeks of leave.") (citation and internal quotation marks omitted); McGregor, 18 F. Supp. 2d at 209 ("In granting an entitlement not mandated by the Equal Protection Clause itself [i.e., twelve weeks of unpaid leave], the FMLA goes beyond enforcement and decrees the substance of the Fourteenth Amendment's restrictions on the States.") (citation and internal quotation marks omitted).

18

This court also concludes that to the extent the FMLA grants state employees an enforceable right to twelve weeks of annual unpaid personal medical leave, the statute fails to meet the second element of the Katzenbach test: the requirement that it be "remedial" in nature and that there be a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." City of Boerne 521 U.S. at 520.

3. Is the FMLA Consistent with the "Letter and Spirit" of the Constitution?

Even if the FMLA could be deemed to meet the "congruity and proportionality" test articulated by the Supreme Court, the statute is still inconsistent with the "letter and spirit" of the Constitution. Consequently, it also fails to meet the third element of the Katzenbach test.

By requiring state employers to provide twelve weeks of annual medical leave, the FMLA not only imposes significant financial burdens on the states as employers, but substantively

19

alters significant aspects of the employment relationship.  Those impositions "are inconsistent with notions of federalism and intrude into the contractual relationship between the state and its employees in a manner that runs afoul of the spirit of the Constitution."  McGregor, 18 F. Supp. 2d at 209.  See also Kilvitis, 52 F. Supp. 2d at 410 ("Finally, as to the third prong of the Katzenbach test, the FMLA infringes upon an area traditionally left to the states - the relationship between states and their employees."); Driesse, 26 F. Supp. 2d at 1334 ("Requiring state employers to provide a benefit totally outside of the employment agreement reached between the state and the employee would be an inappropriate interference into a traditional area of state sovereignty which runs afoul of the spirit of the Constitution and the concepts of federalism which it contains.") (citation and internal quotation marks omitted).

Accordingly, the court is constrained to conclude that the FMLA also fails to meet the third and final element of the Section 5 validity test articulated by the Supreme Court in

<u>Katzenbach</u>: it is inconsistent with the "letter and spirit" of the Constitution and the traditional notions of federalism which it embodies.

    4.    <u>Countervailing Authority</u>.

    In support of his assertion that the FMLA includes a valid and enforceable abrogation of states' Eleventh Amendment immunity, plaintiff relies upon two of the earliest federal cases to consider the issue.  <u>See</u> <u>Jolliffe v. Mitchell</u>, 986 F. Supp. 339 (W.D. Va. 1997); <u>Knussman v. State of Maryland</u>, 935 F. Supp. 659 (D. Md. 1996).  Additionally, an unreported decision from the Southern District of Texas lends support to plaintiff's position. <u>See</u> <u>Biddlecome v. University of Texas</u>, 1997 WL 124220 (S.D. Tex. 1997).[3]

_____

    [3]    The court also notes that the dissent in <u>Garrett</u>, <u>supra</u>, (published after plaintiff filed his legal memorandum) provides a comprehensive discussion of factors supporting the view that the FMLA <u>does</u> validly abrogate Eleventh Amendment immunity.  <u>Garrett</u>, 193 F.3d at 1120-35 (Cook, Senior Dist. J., dissenting).  In some respects the FMLA might well survive challenges to its validity under Section 5 on grounds outlined by Judge Cook, but this case raises only a narrow aspect of the FMLA's reach – the provision granting state employees an

Courts that have since considered the issue have, however, correctly rejected those opinions as seriously flawed.  For example, the United States District Court for the Middle District of Florida observed that:

> The courts in Jolliffe and Biddlecome found Eleventh Amendment immunity to be abrogated based solely on the language of the FMLA.  Neither case applied the Katzenbach test and both relied on the stated purposes in the FMLA in finding that it was properly enacted under the Fourteenth Amendment.  Jolliffe, although decided after City of Boerne, makes no mention of that case.  The district court in Knussman found that Congress had provided unequivocal evidence of its intent to abrogate immunity but did not address the issue of whether Congress had acted pursuant to a valid exercise of power.  Therefore, because those cases did not apply the analysis required by the Supreme Court, the court declines to follow their holdings.

Driesse, 26 F. Supp. 2d at 1334.  See also Kilvitis, 52 F. Supp. 2d at 441 ("I find the majority view to rest upon a more thorough analysis of the Katzenbach factors and to be better reasoned than Knussman, Biddlecome, and Jolliffe.");  Sims, 46 F. Supp. 2d at 740 ("This court has examined the decisions which have addressed

enforceable substantive right to twelve weeks of annual unpaid personal medical leave.

22

the issue of whether Congress effectively abrogated states'
immunity from suit under the FMLA.  The court finds the reasoning
in Thompson and like decisions to be sound and more persuasive
than the reasoning underlying the contrary decisions in Knussman,
Biddlecome, and Jolliffe.").  See also Thompson, 5 F. Supp. 2d at
581 (generally discussing the analytical shortcomings of the
opinions in Knussman, Biddlecome, and Jolliffe).

So, while plaintiff's position is not without some legal
support, that support is neither strong nor persuasive.  The view
held by the clear majority of federal courts is by far the more
solid and correct view.

II.  Has the State Waived Its Sovereign Immunity?

Recognizing that he might not prevail on his argument that
Congress validly abrogated the states' Eleventh Amendment
immunity from suits under the FMLA, plaintiff has a fall back
position: New Hampshire waived its sovereign immunity and
consented to be sued in the federal courts by employees seeking

23

to enforce the medical leave provisions of the FMLA.  He says that by issuing Personnel Memorandum 94-7, the State not only effectively and voluntarily assumed the obligations imposed by the FMLA, but also affirmatively extended the statute's benefits to all state employees.  And, in so doing, says plaintiff, the State necessarily consented to be sued by employees seeking to enforce rights to those benefits under the FMLA.  In other words, plaintiff claims that by adopting certain provisions of the FMLA as conditions (or benefits) of his employment, New Hampshire implicitly waived its immunity from suit in federal court.

At this point, it is important to observe that New Hampshire's Eleventh Amendment immunity relates not only to whether it may be sued, but also to where it may be sued.  "Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court."  Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241 (1985).  See also Metcalf & Eddy, Inc. v. Town of

24

Gorham, 587 F.Supp. 32, 33-34 (D.N.H. 1984) (holding, for example, that even though RSA 491:8 allows suits against New Hampshire in state court, the legislature did not expressly waive the State's sovereign immunity from suit in federal court); State v. Brosseau, 124 N.H. 184 (1983) (holding that although the New Hampshire legislature implicitly waived the State's sovereign immunity from suit under RSA 171-A:13, it did not waive its Eleventh Amendment immunity from suit in federal court).

Plaintiff points to no unequivocal statutory waiver by New Hampshire of its immunity from suit in this court under the FMLA. Instead, he suggests that the State implicitly waived its immunity from suit in federal court by adopting administrative rules that "recognize that the State must obey the mandates of the FMLA in regard to public employees." Plaintiff's objection (document no. 6) at 7. In support of his argument, plaintiff relies on the New Hampshire Supreme Court's opinion in State Employees' Ass'n of New Hampshire, Inc. v. Belknap County, 122 N.H. 614 (1982). There, the court held that "RSA Ch. 100-A

25

provides all eligible governmental employees with an enforceable right to benefits.  Because the existence of a right to receive retirement benefits implies the existence of an appropriate remedy for recovering these benefits, we hold that . . . the statute contains an implicit waiver of sovereign immunity."  Id., at 621-22 (citation omitted).

Plaintiff's argument raises at least two issues.  The first is whether a state agency (as opposed to the legislature) can, by adopting administrative regulations governing the provision of employment benefits to state employees, waive New Hampshire's Eleventh Amendment immunity.  Aside from acknowledging the question's existence, plaintiff provides no support for his claim that a state agency can implicitly (or even explicitly) waive New Hampshire's Eleventh Amendment immunity.  Indeed, New Hampshire law on this point would seem to cut against plaintiff's argument. See, e.g., LaRoche v. Doe, 134 N.H. 562, 567-68 (1991) (holding that because only the legislature can waive the State's sovereign immunity, the Attorney General could not, by failing to promptly

26

raise a sovereign immunity defense, waive New Hampshire's basic immunity from suit).

Nevertheless, even if plaintiff is presumed to be correct, and a state agency can implicitly waive New Hampshire's immunity, the scope of that waiver remains in question. That is to say, while the Division of Personnel might be found to have subjected New Hampshire to suits under the FMLA in <u>state</u> court, plaintiff has pointed to nothing suggesting that the State of New Hampshire has waived its immunity from suit in <u>federal</u> court. The point is critical because, as the Supreme Court has observed:

> The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one. Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. As we explained just last Term, "a State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued."

<u>Atascadero State Hospital</u>, 473 U.S. at 241 (quoting <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 99 (1984)).

27

Consequently, even assuming plaintiff is correct in asserting that the State of New Hampshire implicitly agreed to be sued under the FMLA (a generous assumption), he has failed to point to anything suggesting that New Hampshire also waived its Eleventh Amendment immunity from suit in <u>this</u> court.

Plaintiff may have a valid claim for relief against the State, <u>see, e.g.</u>, <u>Panto v. Moore Business Forms, Inc.</u>, 130 N.H. 730 (1988), but it is a claim he must pursue either administratively within New Hampshire's personnel system, or in New Hampshire's own courts. Even if it can be reasonably argued that New Hampshire waived its sovereign immunity, it cannot be reasonably argued that it waived its Eleventh Amendment immunity from suits brought in federal court.

## Conclusion

This case presents two relatively limited legal questions. The first is whether Congress exceeded its authority under Section 5 of the Fourteenth Amendment when it abrogated the

28

states' Eleventh Amendment immunity from employee suits brought to enforce the FMLA's unpaid medical leave benefits.  As to that narrow issue, the court concludes that Congress exceeded its constitutional authority.

With regard to the second issue presented by plaintiff, the court holds that New Hampshire has neither waived its immunity nor consented to be sued under the FMLA in the federal courts. As the <u>Thompson</u> court was careful to point out, however:

> This is not to say that Congress is powerless to legislate on matters of social policy as it has in passing the FMLA.  This holding merely addresses the issue of whether legislation endowing employees across the country with a general entitlement to leave can be properly considered the enforcement of the provisions of the Fourteenth Amendment within the meaning of § 5. Since this Court holds that it cannot, Congress was without the power to abrogate the immunity of the states to suits under the FMLA.  Congress' attempt to do so is therefore ineffective.

<u>Thompson</u>, 5 F. Supp. 2d at 580.  Other provisions of the FMLA may well meet the tests of validity under Section 5, and of course

29

this decision resolves only plaintiff's suit to enforce (in federal court) the FMLA's personal medical leave provision.

Because Congress did not validly abrogate the states' Eleventh Amendment immunity from suit under the FMLA's medical leave provisions and because New Hampshire did not waive that immunity, defendant's motion to dismiss (document no. 5) is necessarily granted. The Clerk of the Court shall enter judgment in accordance with the terms of this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 29, 2000

cc:  Susanna G. Robinson, Esq.
     Suzan M. Lehmann, Esq.